IN THE

UNITED STATES DISTRICT COURT FOR

THE CENTRAL DISTRICT OF ILLINOIS

E-FILED
Thursday, 31 August, 2017 03:53:25 PM
Clerk, U.S. District Court, ILCD

MICHAEL BRENT
                    Plaintiff

            ~vs~

Case No ; _____

ANDREW Tilden, Riliwan Adelade, James R. ; et al
Caruso, John or Jane Doe pontiac C.C. Health-
Care Administrator, James J. Dawson, Jade
Drilling, karren Zhac, Brian Boggess, John Birkel,
krisi Eshelman, Missy West, John and Jane
Doe Nurses and Physician Assistants, Luis
Shicker, w/exford Health Sources INC., and
John and or Jane Doe wexford Health Inc
Health-Care Administrators and or employees,
Randy Pfister, Guy D. Pierce, Emilly Ruskin,
(Jane Doe Nurse -only known as "Stephany")

SCANNED at PCC and E-Mailed
8|3|17 (date) by VR (initials)
150 (# of pages)

## COMPLAINT

☒ 42 U.S.C. § 1983 (suit against State Officials for Constitutional Violations)

☐ 28 U.S.C. § 1331 (suit against federal Officials for Constitutional Violations)

☒ Other : That all Defendants be Criminally Charged Under (18 U.S.C.A. § 242)

Please Note; This form has been Created for prisoners but can be for Use by non
        prisoners .

        Now Comes the plaintiff, Michael Brent, and states as follows :

My Current Address is : The pontiac Correctional Center, p.o. Box 99
        pontiac, Illinois, 61764

        The defendants Andrew Tilden, Adelade, and Caruso as well as all other aforem-
entioned medical professionals are all employees of the wexford Health Sources Inc
which is hired by (I.D.o.C.) Illinois Department ment of Corrections) to provide Medical Ser-
vices for (inmates herein pontiac correctional Center), as well as various other (I.D.
o.C.) correctional facilities.

(1) of (5)

The defendant Luis Shicker M.D., is employed by Wexford Health Sources Inc. as Medical Director of the region hereto and or residing over Medical Directors in such region including Andrew Tilden herein pontiac Correctional Center Health Care Unit herein.

The defendant John or Jane Doe, is employed as Health-care Administrator, Authority over Approvals or Denials of referrals and requests for off-site care, here at the pontiac Correctional Center.

The defendant Andrew Tilden, is employed as Medical Director over Medical Staff herein at the pontiac Correctional Center

The defendant Riliwan Adelade, is employed as Physicians Assistant to the Medical Director here at the pontiac Correctional Center

The defendant James R. Caruso, is employed as Physicians Assistant to the Medical Director here at the pontiac Correctional Center

The defendant Jane Doe, is employed as Physicians Assistant to the Medical Director at the pontiac Correctional Center

The defendant Krisi Eshelman, is employed as nurse to Assess medical problems and refer them to physicians, at pontiac Corr. Center

The defendant Jade Drilling, is employed as nurse to Assess medical problems and refer them to physicians, at pontiac Corr. Center

The defendant Brian Boggess, is employed as nurse to Assess medical problems and refer them to physicians, at pontiac Corr. Center

The defendant John Birkel, is employed as medtech/nurse to Assess medical problems and refer them to physicians, at pontiac Corr. Center

The defendant Missy West, is employed as nurse to Assess medical problems and refer them to physicians, at pontiac Correctional Center

The defendant Karren Zhar, is employed as nurse to Assess medical problems and refer them to physicians, at pontiac Corr. Center

The defendant Jane Doe, is employed as nurse to Assess medical problems and refer them to physicians, at pontiac Corr. Center

The defendant John Baldwin is employed as Acting Director to the Illinois Department of Corrections I.D.B.C.

The defendant   Jane Doe (only known as "stephany"), is employed as nurse to Assess medical problems and refer them to physicians, at pontiac Corr. Center

The defendant   Randy Pfister, is employed as   Head Warden/Chief Adm. Officer to protect inmates/staff inter alia at   pontiac Correctional Center

The defendant   Guy D. Pierce, is employed as   Head warden/Chief Adm. Officer Assigned to protect inmates/staff at   pontiac Correctional Center

The defendant   Emily Ruskin, is employed as   Warden of Programs/over Health-Care Unit and staff at   pontiac Correctional Center

The defendant   James J. Dawson, is employed as   Autra Sound Examiner, to. examine for signs of cancer/etc at   the pontias Correctional Center

The defendant   John or Jane Doe, is employed as   nurses/physicians Asst. to Medical Director   at   pontiac Correctional Center

## LITIGATION HISTORY

A. Have you brought any other lawsuits in state or federal court dealing with the same facts involved in this case?

Yes ☐      NO ☒

B. Have you brought any other lawsuits in state or federal court while incarcerated?

Yes ☒      NO ☐

C. If your answer to B is yes, how many? (#1)   Describe the lawsuit in the space below.

1. Parties to previous lawsuit :
   Plaintiff(s)   Myself Michael Brent #B-64680
   Defendant(s)   Joel Starkey, Edward Vilt, first Amendment violations, Helen Hamilton, Edward Lewis, Fourteenth amendment violations, S.A. Godinez, Randy Pfister, Kelly Davidson, for Eighth Amendment violations - failure to protect :

2. Court (if federal Court, give name of district; if state court, give name of county?
   Currently pending In Federal Court, United States District Court for the Central District of Illinois - peoria Division.

(3) of (5)

3. **Docket Number/Judge**

14-CV-1314, Sara Darron

4. **Basic claim made**

First, Fourteenth, and Eighth Amendment Violations.

5. **Disposition (That is, how did the case end. Was the case dismissed? Was it appealed? Is it     still pending?)**

Still Pending.

6. **Approximate date of filing of lawsuit** August 6, 2014

7. **Approximate date of disposition**

merit review, sept. 26, 2014.

For additional cases, provide the above information in the same format on a separate page.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

A. **Is there a grievance procedure available at your institution?   Yes ☒   No ☐**

B. **Have you filed a grievance concerning the facts relating to this complaint?   Yes ☒ No ☐   If your answer is no, explain why not**

C. **Is the grievance process completed?   Yes ☒   No ☐**

   *PLEASE NOTE:  THE PRISON LITIGATION REFORM ACT BARS ANY*

(4) of (5)

*INCARCERATED PERSON FROM BRINGING SUIT CONCERNING THE CONDITIONS*

*OF HIS CONFINEMENT UNLESS AND UNTIL HE HAS EXHAUSTED AVAILABLE*

*ADMINISTRATIVE REMEDIES. PLEASE ATTACH COPIES OF MATERIALS*

*RELATING TO YOUR GRIEVANCE.*

1.) Filed first medical grievance 7-14-13 to counselor, recieved it back from counselor 7-18-13, sent it to grievance officer 7-18-13, recieved it back from grievance officer Oct. 1, 2013, sent it to A.R.B. Oct. 21, 2013, never recieved a response.

2.) Filed second medical grievance to counselor 5-1-15, recieved it back May. 7, 2015, sent it to grievance officer May. 7, 2015, never recieved it back, wrote two letters to grievance officer inquiring as to status of my grievance dated

3.) Filed third grievance (Emergency) september. 29, 2015 to Warden, recieved my grievance back from Warden Oct. 6, 2015, sent my emergency grievance to A.R.B. Oct. 21, 2015, recieved response from A.R.B. dated Nov. 4, 2015

4.) Filed Fourth grievance (Emergencey) March. 16, 2016 to Warden, recieved my response from Warden March. 25, 2016, sent emergency grievance to A.R.B. on April. 5, 2016, and recieved response to emergency grievance from the A.R.B. dated May. 11, 2016.

(5) of (5)

## STATEMENT OF CLAIM

Place of the occurrence _Pontiac Correctional Center.-The year of_

Date of the occurrence _2013 — 2016_

Witnesses to the occurrence _Documented Evidence_

State here briefly the FACTS that support your case. Describe how EACH defendant is involved.
Do not give any legal arguments or cite cases or statutes. Number each claim in a separate paragraph.
Unrelated claims should be raised in a separate civil action.
THE COURT STRONGLY URGES THAT YOU USE ONLY THE SPACE PROVIDED.

1.) plaintiff first raised the issue of the defendants Andrew Tilden and Riliwan Odelade changing my medication from prilosec to pepcid knowing that the prilosec was prescribed to me by a specialist, on 7-14-13, in my first grievance. (see Exhibit-A.1 (1-3, grievance Attached).

2.) Plaintiff asserts that in regards to paragraph (1) he also informed the defendants Odelade and Tilden that he (plaintiff) was experiencing pain across his chest, the pepcid was ineffective, periodic Blood in my urine, numbness in my stomach left side, periodic pain in my midsection, informed the defendants that plaintiff has tryed to voice my complaints to the medtechs, including the pain in my throat, and attempted to show the defendants Tilden and Odelade as well as severl medtechs my medical records showing that I've had surgery to remove polyps from my vocal cord, all to No Avail. (see Exhibit-A.2)

3.) IN regards to paragraphs (1) and (2) plaintiff asserts that he was told repeatedly by defendants Tilden and Odelade as well as medtechs and nurses John and Jane Does, their policies does not recognize and or acknowledge chronic Acid Reflux as "A chronic illness," also all of my complaints of pain of any kind was ignored.

4.) Plaintiff asserts that after and despite me continuously being

(1) of (44)

rejected to recieve adequate medical attention for my issues and pain, he was repeatedly inadequately responded to i.e ignored over the next year by medtechs, nurses, medical Director Tilden, physicians Assistant Odelade etc. even in regards to the pain in my throat.

5.) Plaintiff asserts that I was called to sick-call on April. 17, 2015 after requesting such and continuouse complaining of the worsening of my illnesses i.e developing [a golf ball size Mass under my left armpit], wherein plaintiff attempted to convey to nurse Jade Drilling, and physician Assistant Riliwan Odelade again, all prior conveyed medical illnesses as well as my newly developed Mass under my left armpit that was causing constant pain accross my chest. (See Exhibit-(A.3), medical file etc attached).

6.) Plaintiff asserts in regards to paragraph (5), he was refused any and all medical attention and or evaluations on the date of April. 17, 2015 listed above by nurse Jade Drilling and Riliwan Odelade while in their care and or seeking medical Attention from the two defendants for plaintiffs multiple serious medical illnesses, because plaintiff insisted to both parties that he plaintiff was in fact procedually and legally by Law exempt from signing and being charged a $5.00 - co-payment of which plaintiff was told that in any case if he didn't sign he would not recieve medical attention and or be seen, despite plaintiff actually showing the defendants documentation confirming such fact, both nurse Jade Drilling and Riliwan Odelade still denied plaintiff any medical Attention. (See documentation from medical file and Affidavit from cellmate). Attached, Also Public Act on co-payment.) Exhibits (A.3-doc's-1-4

7.) As to the claim in paragraph (6) and upon information and belief,

plaintiff asserts that health-care i.e nurse Drilling and physicians Assitant Adelade can not deny plaintiff medical attention by any means procedually nor legally based on my financial short comings, or refersal to sign a co-pay.

8.) As it relates to the claims in paragraphs (7#) (6#) and (5#) plaintiff asserts that he adamantly and vehemently stressed to nurse Drilling and physicians assitant Adelade on the date of April.17,2015 that I was in unyielding [Pain] in my chest from the mass under my left armpit, the blood still appearing in my urine etc.

9.) As it relates to paragraphs (#8)(#7)(#6)(#5) plaintiff asserts that the defendants i.e Medical Director Andrew Tilden, physicians Assistant Kiliwan Adelade, nurses, medtechs i.e Health-care here in the facility, has known about the bill of Law Public Act 97-0562 offender co-payment [since 2011] when it was implemented, and thus they have known about the language therein exempting indegent inmates from such co-payments, and under what circumstances and conditions such exemption is applicable. (See copy of Public Act 97-0562 Att). Exhibit - A.3-doc's) 2-4)

10.) As to the first two aforementioned encounters with the defendants, plaintiff asserts that he filed his first grievance 7-14-13 ,with the counselor, recieved her response back 7-18-13, sent it to the grievance officer the same date, I resieved it back oct. 1,2013 and sent it to the A.R.B oct.21,2013, and never recieved it back from the A.R.B., plaintiff filed his second grievance dated May.1,2015 sent to the counselor may.6,2015, plaintiff recieved the counselors response may. 7, 2015 and forwarded such to the grievance officer the same day may.7.2015, after the procedural (2#) two months plaintiff wrote two letters to the grievance officer inquiring of the status of my second grievence, letters dated Aug. 22,2015, and Aug.30,2015 , to no avail i.e No response, plaintiff then attempted to send his second grievance to the A.R.B. explaining

his efforts to the A.R.B. to No Avail. efforts to A.R.B. dated
Sep. 10, 2015    ; Sept. 1, 2015 (see Exhibits - A.4- doc's (1-4)

11.) Plaintiff asserts that he gave blood on August 12, 2015 to check plain-
tiffs C.M.P., L.P, C.B.C., G.F.R, and T.S.H. Levels. (see Exhibit - A.5 )

12.) Plaintiff asserts that he was called to sick-call on Aug. 21, 2015 after
continuously stopping the Medtechs and nurses, and therein was seen by a
one physicians Assistant James J. Caruso and Nurse Brian K. Boggess
wherein plaintiff again conveyed All of his medical issue(s), one main issue
being the [Mass] under my left armpit which was and (is) causing con-
stant pain accross my entire chest, in my stomach [liver area] etc, also
blood in my urine etc, to which physicians Asst. and nurse Both began insis-
ting on convincing me that the Mass under my arm was nothing more than
"Fatty tissue", and that the pain in my stomach was probably "something
I ate", this without even examining me but merely only asking me to see
it [ the Mass under my left arm-pit], and they both simply ignored my com-
plaints of constant pain and my assertions of blood in my urine and all my
other medical issues. (see Exhibit(B. 1) , copies from medical file and call-pass).

13.) Plaintiff asserts that on Aug. 25, 2015 he wrote to Medical Director Andrew Tilden
again making him aware of my serious medical issues and how much pain
I am in and how the medical staff seems to be continuously down
playing and or defering Knowledge of my serious medical problems and
imminent threat to plaintiffs health and wellbeing in that plaintiff
could very likely have [lymphoma cancer], and thus plaintiff ask-
ed medical Director Tilden to please call me over to health-care, pro-
vide me with a proper examination, and please send me out to recieve
a definitive diagnosis because time could be of the essence. (see
letter to medical Director with Proof cert Service Attached). (Exhibit- B.2)

14.) Plaintiff asserts that he was called to the Health-care Unit on August.
27, 2015 to see the Medical Director Andrew Tilden wherein physicians
Assistant Caruso and nurse Bogges were also present, and after being

(4) of (44)

asked by Medical Director Tilden "What exactly are you here to see me for," plaintiff attempted to inform Dr. Tilden exactly what he was there to see him (Tilden) for, i.e. the mass under my left armpit, and the pain its causing across my chest, in my abdomen, My Medical history of Chronic Acid Reflux, the fact that plaintiff has had the H-pylori disease [Three Times] and the possibly exsisting extremely serious illnesses because of it [i.e. stomach cancer], and the fact that plaintiff has been taking the Medication Prilosec for then ten plus years with the exception of his (Dr. Tildens) interference with such meds, and informed Tilden of all my other medical issues, when plaintiff was immediately and repeatedly throughout interrupted by physicians Assistant Caruso and nurse Boggess Whom chose consciously to interject Undiagnosed, false and undefinitive less serious, and personal interpreted assessments from their standpoint, i.e "[lypoma]" seemingly intent on influencing the Medical Director Tildens conclusion of such. (See Exhibits - B.3 - doc's, (1-5)

15.) Plaintiff asserts in regards to paragraph (14) that Medical Director Tilden too failed to properly examine me, and without such proper examination i.e M.R.I or a Biopsy of the Mass under my left armpit and or a esophagus and stomach examination, nor asking me any concerned questions of which could assist in leading him (Tilden) to a definitive answer i.e a [diagnosis], Dr Andrew Tilden in a cursory approach to such matters, prescribed plaintiff (1#) IBUPROFEN (600-M.G.) TABS to Mask and or Manage my pain, and (2#) A X-Ray and Antibiotic [cephalexin-500 MG] TABS, Generic for [KEFLEX], both Methods of which he (Tilden) knew from the scope of his expertise and knowledge in the field of medicine would yield [NO] evidense nor definitive answer and or [diagnosis] as to whether or not I have Cancer or not, or what (is) the cause of plaintiffs pain and suffering. (See copies from plaintiffs medical file Attached). (Exhibit - B.3)

16.) Plaintiff asserts as it relates to paragraph (15) that on Aug. 27, 2015 in the presence of Medical Director Tilden and attempting to attain adequate medical Attention, that I did submit to Tilden a page from The Family Medical ENCYCLOPEDIA, which outlines what action should be taken by a person who developes a growth that does'nt clear up in a few days. (See copy Attached Exhibit (B.3 - page #4)

17.) Plaintiff asserts as it relates also to paragraph (15) and (16) that Dr. Tilden also had plaintiff scheduled to give blood of which plaintiff gave on september 9, 2015 to which Tilden told plaintiff on the above aforementioned date that he would have it [My blood] checked specifically for [lymphoma Cancer], but never did as far as plaintiff knows. (See Call pass Attached here-Exhibit B.5 ) and medical file.)

18.) Plaintiff asserts that also on the above aforementioned date Aug. 27, 2015 while being seen by Dr. Tilden that he also said he would see plaintiff in "(21# days) from such date. (see copy from medical file) but never did, (see Exhibit-B.3 ), (page 4) of it).

19.) Plaintiff asserts that on september. 21, 2015 he wrote to Medical Director Tilden informing him that the antibiotics he prescribed [did Not work] and could he Tilden please call me back over to health-care, help me, and send me out to an outside hospital to be tested properly ie [Examined and Diagnosed]. (see Exhibit-B.6 , letter Attached).

20.) Plaintiff asserts that the defendants have known about the blood in my urine for quite a long time and have did nothing (see Exhibit-C.1 Attached).

21.) Plaintiff asserts that he filed his (third 3# ) grievance on his medical issues on sep. 29, 2015 on an Emergency basis to the chief Administrative Officer Randy Pfister, recieved a response to such on Oct. 2, 2015, and a memo instructing plaintiff to send my emergency grievance to the counselor, plaintiff sent such to springfield on Oct. 21, 2015 and recieved a respose to such on Nov. 4, 2015. (see documentation Attached grievances and responses; (Exhibits - C.2 pages 1 - 7 )

22.) Plaintiff asserts that on Nov. 17, 2015 he wrote to Medical Director Tilden pleading with him to please send me the medication of prilosee because plaintiff was out of medication for my chronic Acid Reflux and plaintiff's chest was really Burning. (see Exhibit-C.3)- letter Attached).

23.) Plaintiff asserts that on Oct. 15, 2015 he again was seen by Medical Director Tilden wherein plaintiff informed Tilden again of the pain he was in because of the mass under my left armpit, the worsening of such, the blood that continues to appear in my urine, pain that seems to be consuming the left side of my body etc, and plaintiff recieved more cursory treatment and or little to No treatment at all, ie [No Avail]. (see Exhibit-C. 4, Attached from medical file)

24.) Plaintiff asserts that he wrote to the Medical Director for Wexford Health sources located in Chicago Ill, Louis Shicker and explained to him that plaintiff has an extremely serious medical issues and or issue(s) ie the mass under my left armpit, pain constantly accross my chest, the fact that I've sought adequate medical attention from several members of the staff of health-care here in the facility to [No Avail] and pleaded with him to please get involved ie Help Me get proper medical treatment, ie a diagnosis, and prompt treatment, This to No Avail also. (see Exhibit-C. 5, dated Nov. 2. 2015, letter to Shicker).

25.) Plaintiff asserts that he again gave blood on December. 23, 2015, and again no-one called plaintiff to discuss the results thereof nor any assessments regarding, and tests or examination regarding the complaints about the mass under my left armpit or blood in my urine. (see Exhibit documentation from medical file (D.1 doc. 1 of 1).

26.) Plaintiff asserts that he was seen again under (Urgent Care) status on January. 21, 2016 by the medical Director Tilden and a nurse plaintiff only knows as "Stephany" wherein plaintiff again tryed to explain to Tilden that I am in constant pain accross my chest, the blood is still in my urine and things with my health continue to get worse and thus plaintiff pleaded with medical Director Tilden to please send me out to be properly examined and diagnosed and there to treated to [No Avail], Moreover the nurse in attendance whom plaintiff only knows as "Stephany" actually stated to plaintiff that quote " the removal of the mass under your arm would be "considered "Cosmetic Surgery", and therefore my complaints were ignored yet again. (see documentation from medical file-Exhibit-D. 2 ), but the defendant Tilden prescribed motrin 600 mg. to manage my pain as far as plaintiff knows and nothing else.

(7) of (44)

27.) Plaintiff asserts that on March 5th and the 7th 2016 he attempted to stop medtech karren Zhar to request to see the doctor again and tell her about the pain I was in but she would'nt stop, in fact plaint-iff was yelling on the gallery for medtech Zhar to come back to my cell, she simply yelled back to plaintiff quote" you should have had a sign in the bars, I don't come back once I pass", unquote.

28.) ON March.8, 2016 plaintiff asserts as to such date that he tryed to stop another jane doe nurse to complain of his pain again and was quickly asked for a P.96 medical co-payment and when plaintiff said "he was indigent, did'nt have a "P.96 co-payment" and therein tryed to request medical attention and state how much pain plaintiff is in, jane doe nurse stated "you don't have a co-payment I'm not hearing it, if I stood and listen to everyone who had a story I'd be here all day" unquote, and she walked away.

29.) Plaintiff asserts that he again attempted to stop and convey his medical issues to nurse Zhar on march.14, 2016 while housed in south protective custody as plaintiff had did prior in the aforemention dates above, but was again walked right pass ie ignored because plaintiff did'nt have a p.96 co-payment.

30.) Plaintiff asserts that he gave blood again on March.16, 2016 for C.M.P, I.P.D. G.F.R. but not to test me for [cancer]. (see Exhibit-D.3    ).

31.) Plaintiff asserts that after investigating, it seems plaintiff was submit-ted for an onsite ultra sound and seemingly approved on March.16, 2016. (see Exhibit-D.4    )documentation from medical file).

32.) Plaintiff asserts that he also filed his fourth grievance dated March.16, 2016 on plaintiffs medical issues and his attempts to recieve adequate and much needed medical attention for the mass under my armpit, the blood in my urine etc. pain endured, emergency to the warden. (see Exhibit-D.5; 1-7);

33.) Plaintiff asserts that he again was seen for chronic clinic on march. 22, 2016 wherein he again tryed desperately to get medical staff to send me out to be properly examined and diagnosed and thereto given the much needed medical attention sought over this long span of time, to [No Avail]. (see Exhibit-D.4).

34.) Plaintiff asserts that he recieved a response back from the warden and or the grievance officer to his emergency grievance dated march. 24, and 25, 2016. (see Exhibits - D.5 ).

35.) Plaintiff asserts he filed his appeal to springfield A.R.B dated April. 5, 2016 (Exhibit - D.5 ) Attached.

36.) Plaintiff asserts that on April. 6, 2016 he was given more cursory treatment in the form of a ultra sound of which Dr. Tilden knew from the scope of his expertise and knowledge in the field of medicine that such would yield [No real evidence] nor definitive answers and or [diagnosis] as to whether or not plaintiff has [cancer] or not, or what (is) causing the constant pain plaintiff is experiencing, enduring and being forced to suffer. (see Exhibit documentation from medical file (Exhibit-D.4).

37.) Plaintiff asserts that he also wrote to wexford Health Sources to a one Danial Cann on April. 6, 2016 and therein informed him i.e. wexford Health Sources of my medical issue (s) and how plaintiff has been repeatedly denied adequate medical attention, the length of time I've been denied such and whom is involved in the denial of such medical attention, i.e. a diagnosis for the mass under my left armpit, the blood in my urine and even a condition medically known as "Anejaculation and or Retrograde Edaculation both of which causes the semen to back up into the bladder which can also (lead to cancer) if not treated, and thus plaintiff pleaded with wexford to please get involved and help him get adequate medical attention much needed, to [No Avail].

(9) of (14)

(see Exhibit-(E·1 )letter to Wexford Health Sources Attached).

38.) Plaintiff asserts that he recieved a response back from Wexford Health Sources on April·14, 2016 whom therein expressed [NO] real concern for the danger, pain, or suffering plaintiff informed their company that he was in ie the great possibility that plaintiff could have [cancer], but they [Wexford] instead chose therein their response to plaintiff, to apothetically and without any Humane concern for plaintiff's safety, Health or wellbeing, endorsed their employee's herein the facility despite plaintiffs contentions that they've continuously denied him any definitive answers or diagnosis for any of plaintiffs medical issues nor any adequate medical Attention thereto. (see Exhibit- E·2 ) Wexfords response Attached).

39.) Plaintiff asserts that he on April·15, 2016 put in a medical request form inquiring as to the results of his ultra Sound exam, (to No Avail) ie No response. (see Exhibit-(E·3 )medical request copy).

40.) Plaintiff asserts that he again attempted to stop medtech Zhar on April·25, 2016 and April·26, 2016 whom refused to stop and hear me out regarding my pain and the fact that plaintiff had rerieved [No Medical Attention in all this time, all to [No Avail].

41.) Plaintiff asserts that on and or dated May·11, 2016 he recieved a response back from the A.R.B. ie Springfield to his fourth grievance marked emergency. (see Exhibit -D5 ).

42.) Plaintiff asserts that on 1July·7, 2016 he wrote to Medical Director Tilden again pleading for Help, informing him of the enormous pain plaintiff (is) in and being forced to endure, and how the medication [pepcid] was ineffective, and could he provide something more effective and to call me over to see him, all to [No Avail]. (see Exhibit - E·4 ) letter to Tilden with response).

43.) Plaintiff asserts that on July·8, 2016 he was called to sick-call instead wherein again plaintiffs pleas for a diagnosis and adequate treatment for the mass he has, went unanswered, [No Avail]. (see Exhibit - E·5 ).

44.) Plaintiff asserts that he was again called to sick-call after requesting to be seen by the Medical Director, and was therein seen by nurse Krisi Eshelman and the same Jane Doe nurse plain mentioned in paragraph (28) of this complaint, wherein plaintiff again tryed to attain the much needed and pleaded for Medical Attention for the mass under my armpit, blood in my urine, the pain and suffering I've been enduring, and the condition AneJaculation and or RetraeJaculation, all of which plaintiff informed nurse krisi whom wasted no time insisting plaintiff sign a P.96 co-payment before proceeding with my visit therein, despite plaintiff telling her and show her the public Act of which legally defines plaintiff as financially indigent and thus exempt from such payment, and thus in order to get some kind of treatment or even the lack thereof in an act of desparation plaintiff signed such co-payment [under duress] ie threat of being denied being seen and or recieving medical Attention. (see Exhibit (E.6) 1 of 1). dated August. 14, 2016

45.) Plaintiff asserts that he again gave blood on september. 2, 2016 and was never called back to discuss any results nor told what I was being checked for or anything. (see Exhibit (F.1 (doc's ). 1 of 1).

46.) Plaintiff asserts that again out of the blue he was called to health-care unit in the month of Nov.l , 2016 and given another Ultra sound examination and again was never called as to the results, nor is such exam calculated to lead to any meaningful nor definitive results of which would allow medical Director Tilden to provide plaintiff with a much needed and desired [diagnosis].

47.) Plaintiff attaches as (exhibit (F.2 (2 of 2) pages (45) (46) (47) and (48) of the department rule book of which therein contains the – Health Care Unit OFFENDER BILL OF RIGHTS; " ] (see Exhibit (F.2 (doc's (2 of 2) Attached ), therein requiring the Medical Director, Head Physicians, Physicians Assistants, nurses and medtechs ie Health-care staff herein the facility to treat [patients] inmates in a dignified and or dignity, respects [informed consent] and to be involved in the dicisions regarding plaintiff [patient] inmates care, and for the defendants [Wexford Health Sources] to adapt, acknowledge and assure all offenders (plaintiff) patients are treated in a manner that recognizes their basic

(11) of (44)

[Human Rights]. [This Policy is also directed as establishing an atmosphere of trust] between the offender [patient/plaintiff] and the health-care provider. And, [It is the responsibility of the Health Care Administrator to oversee the provisions of this policy. Thus the "Wexford Health Sources Incorporated" are legally bound by and in agreement and binding of the illinois department of corrections centers Departmental Rules and Regulation, Administrative and Institutional Directives and Policies governing thereof in conjuncture with [The Law], [NON Discretionary] (see Exhibit - F.2 (2 of 2) Attached.

48) Plaintiff contends that he (is) both procedually, Humanely as well as constitutionally [Entitled] adequate Medical Attention which [Requires] the defendants named herein to provide plaintiff with medical attention at a level reasonably commensurate with modern medical science and of a quality acceptable within prudent professional standards conducive and instrumental in the accomplishment of such provision.

49) Plaintiff contends upon information and belief that the wexford Health Sources INC. Have policies of which they as a company and or corporation know clearly violates plaintiff [patient] i.e inmates Eighth amendment constitutional rights to prompt, and adequate attentive medical attention and thus they are consciously, knowingly and willfully acting in violation of not only MY Eighth amendment constitutional rights, but also contrary to the Departmental rules and regulations and Administrative Directives and the state and Federal Laws which govern provisions Requiring such actions of them.

50) Plaintiff contends upon information and belief that the wexford Health Sources INC. have policies which therein urges, fosters, and in some cases of which involve potentially and or critical illnesses which can be costly to treat, even instructs their employees i.e medical staff here in the facility, in its language, to defer knowledge of and or actual diagnosis of such critical illnesses i.e [all Cancer (s)], Hepatitis (A), (B) or (C) etc and to even not recognize, acknowledge nor accept certain potentially life threatening illnesses i.e [chronic Acid Reflux] as a chronic illness all together solely for monitary gain.

51.) Plaintiff contends as it relates to paragraph (50) that the Wexford Health Sources INC. has policies therein instructing it's employees herein the facility and throughout the I.D.o.C. - Illinois Department of Corrections to [Defer Knowledge of the above aforementioned Illnesses until the later stages] of such Illnesses.

52.) Plaintiff contends as it relates to paragraphs (50)(51) and (3) and upon information and belief that the Wexford Health Sources INC. has policies therein essentially instructing their employees throughout the I.D.o.C. Illinois Department of Corrections i.e herein the facility, to defer knowledge of potentially fatal Illnesses and/or disease/[cancer(s)]nor prompt diagnosis thereto, for the sole purpose of implementing cost effective financial restraints, nor should its employees i.e herein the facility acknowledge or accept certain illnesses as chronic solely for financial gain i.e the ability to charge unqualified inmates and/or plaintiff unjustified (medical co-payments $5.00) under the threat of the refusal of medical attention, and thus therein creating an extremely blatant set of duplicitous guidelines for their employees to follow and therein putting in place impediment after impediment to block plaintiffs free access to medical attention while simultaneously allowing their company to manipulatively **monopolize** their control over such, all while putting plaintiff in extremely life threatening situations.

53.) Plaintiff contends upon information and belief that the Wexford Health Sources INC. knowingly sets forth blatant language therein its policies which perpetuates an overt impertinent attitude in its employees herein the facility, for the constitutional and/or Lawful and procedural provision which require that they provide plaintiff adequate medical attention i.e [a diagnosis] prompt, nor does its employees respect any ordinaces or **sanctions** within the constitution or law thereto.

54.) Plaintiff contends upon information and belief the Wexford Health sources INC policies in and of themselves are completely and deliberately indifferent to plaintiffs serious medical needs and the pain and suffering endured therefrom.

55.) Plaintiff contends that medical Director Andrew Tilden herein named (is) and

(13) of (44)

was at the times plaintiff was seen by him, deliberately indifferent to plaintiffs serious medical needs of [a prompte diagnosis] for the mass under plaintiffs left armpit, the blood in his urine, pain in his stomach, pain in his throat, the condition of Aneiaculation and or Retrograde Eiaculation etc, when he took little to No action in the assessment of plaintiffs medical complaints, and proscribed a course of action so cursory and ineffective as to amount [No treatment at all].

56) Plaintiff contends upon information and belief that Medical Director Tilden knew due to the scope of his expertise and knowledge of or in the field of medicine that the course of action he took in providing plaintiff adequate medical treatment or the lack thereof [would yield No] real results of which would allow the defendant to give plaintiff any definitive answers as to his medical illnesses and thus such course of action by the defendant would Not provide plaintiff a diagnosis to his serious medical issues and thus the defendant Tilden was in fact deliberately indifferent.

57) Plaintiff contends that the defendant Tilden was and (is) in fact deliberately indifferent to plaintiffs serious medical needs in that the defendant continued these acts of cursory treatment or the lack thereof with the sole intent to provide plaintiff nor himself with No real answers to plaintiffs medical issues and or illnesses which would allow the defendant to avoid providing plaintiff a diagnosis which would compel the defendant [by Law] to act promptly at such point and provide plaintiff treatment of a much more significant and constitutional required quality acceptable [within] prudent professional standards at a level reasonably commensurate with modern medical science, which would be contrary to the policies of the company from which the defendant is employeed and thus contrary to the true goals of such.

58) Plaintiff contends Tilden was deliberately indifferent in that he knew from the scope of his expertise and knowledge in the field of medicine that the facility herein did not and could not allow the defendant Tilden

(14) of (44)